**Albert PITTS, Petitioner–Appellant,**

v.

**James COOK, Warden and The Attorney General of the State of Alabama Mr. Don Siegelman, Respondents–Appellees.**

**No. 90–7171.**

United States Court of Appeals, Eleventh Circuit.

Feb. 21, 1991.

---

David R. Boyd, Patricia A. Hamilton, Balch & Bingham, Montgomery, Ala., for petitioner-appellant.

Mary Elizabeth Culberson, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before FAY and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

In this appeal from the district court's denial of his habeas petition, Albert Pitts challenges his state court conviction on *Batson* and ineffective assistance of counsel grounds. We agree with the district court that petitioner's *Batson* claim was procedurally defaulted and that petitioner fails to show the cause and actual prejudice necessary to avoid the procedural default bar.[1] We also agree that Pitts' ineffective assistance of counsel claim is meritless.

---

1. Because we conclude the petitioner fails to show cause for his default, we do not reach the question of actual prejudice.

The district court's denial of Pitts' petition is therefore affirmed.

## I.

Albert Pitts, a black man, was convicted in 1985 of theft of property worth ninety dollars. The prosecution's case and resulting conviction were based almost entirely on identification testimony of two white witnesses.

The jury venire consisted of fifty-three people, including eighteen blacks. One black man was struck for cause because of his relationship to Pitts. The prosecutor then used all twenty of its peremptory strikes, striking sixteen black and four white people. Pitts' counsel made no objection to the prosecution's use of its peremptory strikes. The resulting jury was composed of eleven whites and one black.

Pitts appealed his conviction. In April 1986, during the pendency of petitioner's appeal, the Supreme Court announced its decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (prosecutor's use of peremptories to exclude blacks from jury in single case may demonstrate equal protection violation). The Alabama Court of Criminal Appeals affirmed Pitts' conviction without a written opinion in July 1986. 497 So.2d 859. A petition for rehearing was filed and denied, as was a petition for certiorari to the Alabama Supreme Court. Neither petition mentioned *Batson*.

█ Pitts then filed a *pro se* petition for writ of federal habeas corpus, raising the *Batson* issue for the first time.[2] The district court appointed counsel to represent petitioner; and habeas counsel added the claim of trial counsel's ineffective assistance.

After an evidentiary hearing, the magistrate recommended that the writ be granted based on *Batson*. The magistrate concluded that, because *Batson* significantly altered prior law, petitioner's failure to ob-

ject contemporaneously to the jury selection process did not constitute a procedural default. He further ruled for petitioner on the merits of the *Batson* claim, concluding that the state had failed to state neutral reasons for the peremptory strikes. The prosecutor from Pitts' original trial for theft testified at the evidentiary hearing on the *Batson* claim; but, approximately four years after that trial, he could not recall the reasons for his strikes.

The district court rejected the magistrate's recommendation, holding that petitioner's claim was procedurally defaulted and that no cause existed to excuse the default. Petitioner's ineffective assistance of counsel claim was rejected on the merits, and the petition was dismissed.

## II.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the equal protection clause forbids purposeful exclusion of potential jurors solely on account of their race or on the assumption that members of their race will be unable to consider the case impartially. *Id.* at 89, 106 S.Ct. at 1719. The Court also said that a defendant may establish a prima facie case of such purposeful discrimination based solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's own trial. *Id.* at 96, 106 S.Ct. at 1723.

The first part of the *Batson* holding was a reaffirmation of principles over a century old. *See, e.g., Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (state's purposeful racial discrimination in jury selection violates equal protection clause); *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880) (state denies black defendant equal protection of laws when it tries him before jury from which members of his race have been purposeful-

---

**2.** Respondents have waived the exhaustion of state remedies requirement for federal habeas relief under 28 U.S.C.A. § 2254, stating that under Alabama law petitioner would be precluded from raising his *Batson* claim in the state courts because the claim could have been, but was not, raised at trial. Put differently, petitioner has no state remedy available for him to exhaust. *See Castille v. Peoples,* 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (since exhaustion of state remedies requirement is not jurisdictional, federal habeas court need not require that claim be presented to state court if it is clear state court would hold claim procedurally barred).

ly excluded). But the second part—establishing not what equal protection forbids, but how that forbidden conduct may be proved—was new, changing the rule of *Swain* that required proof of a pattern of repeated strikes of blacks over a number of cases before purposeful racial discrimination on the part of the state could be inferred. *See Batson*, 476 U.S. at 92–93, 106 S.Ct. at 1720–21.

■ Petitioner Pitts is a black man, and several blacks were struck from his jury by the prosecution. In this habeas petition, therefore, Pitts wishes to challenge the constitutionality of his jury based on *Batson*.[3]

Under Alabama's contemporaneous objection rule, however, review on appeal is limited to matters on which rulings were invoked in the trial court. *See, e.g., Cochran v. State*, 548 So.2d 1062 (Ala.Crim.App. 1989). At petitioner's trial, neither petitioner nor his attorney objected, either to the makeup of the jury in general or to the exercise of peremptory strikes in particular. Thus, petitioner's failure to contemporaneously object would have barred consideration of his *Batson* claim on direct review (or otherwise) in the state courts.[4]

■ When a defendant is barred from raising a federal constitutional claim in the state courts because of his failure to follow the state's procedural rules, he is also barred from raising the claim in his federal habeas petition absent a showing of cause for, and actual prejudice from, the procedural default. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). So, Pitts' unraised *Batson* claim cannot be considered

in the federal courts unless he is able to show cause and actual prejudice.[5]

### III.

■ To show cause sufficient to excuse a procedural default, a petitioner ordinarily must establish that some objective factor external to the defense impeded his counsel's efforts to raise the claim. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). One objective, external factor the Court has held sufficient is novelty: the legal basis for the constitutional claim was not reasonably available to petitioner's counsel. *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). Constitutionally ineffective assistance of counsel may also establish cause. *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645.

■ Petitioner Pitts utilizes these alternatives to argue that the state cannot "have it both ways." According to Pitts, either *Batson* was so novel that a pre-*Batson* failure to raise a *Batson*-type objection should be excused for "cause"; or it was not so novel—in which case a pre-*Batson* failure to raise a *Batson*-type objection should constitute ineffective assistance of counsel. While this argument has initial appeal, it in fact presents a false dichotomy. The state can "have it both ways," because the standard for "cause" to excuse a procedural default differs from the standard for objective unreasonableness of counsel. *See Pelmer v. White*, 877 F.2d 1518, 1521–23 (11th Cir.1989) (theory underlying unraised objection to jury instruction not so novel as to excuse procedural default, but also not so established that fail-

---

**3.** Pitts had been convicted when *Batson* was decided, but his direct appeal was still pending. Although *Batson* is not generally retroactively applied to habeas petitions, *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), it does apply retroactively to cases—such as Pitts'—pending on direct review when the *Batson* judgment was rendered, *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

**4.** *See supra* note 2.

**5.** Petitioner argues, and the magistrate below mistakenly held, that the *Batson* holding was so

novel that a pre-*Batson* failure to raise a *Batson*-type claim cannot constitute a procedural default. Petitioner and the magistrate cite *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), as support for this proposition. That is not what *Reed* says, however; instead—as discussed *infra* in the text—*Reed* holds that the novelty of the claim may constitute the "cause" element of the cause and prejudice requirement necessary to avoid the procedural bar. *See id.* at 16, 104 S.Ct. at 2910. If a defendant does not comply with procedural requirements in presenting a claim, he has procedurally defaulted, regardless of the novelty of the claim.

ure to raise objection constituted ineffective assistance of counsel); *see also Engle v. Isaac,* 456 U.S. 107, 133–34, 102 S.Ct. 1558, 1574–75, 71 L.Ed.2d 783 (1982) (existence of tools to construct constitutional claim—and thus lack of novelty sufficient to constitute cause for procedural default—does not mean every astute, much less competent, counsel would have raised the claim).

■ The novelty of a claim will constitute cause sufficient (when joined with actual prejudice) to excuse procedural default if the legal basis for the claim was "not reasonably available to counsel," *Reed,* 468 U.S. at 16, 104 S.Ct. at 2910, or if petitioner's counsel "lacked the tools to construct" the constitutional claim, *Engle,* 456 U.S. at 133, 102 S.Ct. at 1574. When the *Engle* Court wrote in 1982, the contours—and even the existence—of the novelty-as-cause principle were far from clear. Yet *Engle* contains helpful language: "Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." *Id.* at 134, 102 S.Ct. at 1575.

■ Neither the Supreme Court nor the Eleventh Circuit has addressed whether a *Batson* claim before April 1986 was sufficiently novel to constitute cause for failing to object contemporaneously to the prosecution's use of its peremptory challenges. The Fifth Circuit has addressed the question, however, and has held that a *Batson*-type objection or claim was reasonably available—and thus not sufficiently novel—in 1985. *See Jones v. Butler,* 864 F.2d 348 (5th Cir.1988). We agree.

From the post-*Reed* case law, we can glean a mode of analysis reflecting the language in *Engle* quoted above—an analysis focusing on whether others were recognizing and raising the same or similar claims in the period preceding or concurrent with the petitioner's failure to raise his claim.[6] *Cf. Smith v. Murray,* 477 U.S. 527, 536–37, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986); *Pelmer v. White,* 877 F.2d 1518, 1522–23 (11th Cir.1989) (both concluding claim reasonably available because recognized and raised by others before and at time of petitioner's default; in *Smith,* various forms of claim had been "percolating" in the lower courts for years).

As noted by the *Jones* court, by the time of Pitts' trial in 1985 the *Batson*-type claim—that the prosecution's discriminatory use of its peremptory challenges is unconstitutional—was familiar and had been asserted in many other cases. 864 F.2d at 364. The issue, in fact, had already visited the Supreme Court in 1983. *See McCray v. New York,* 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983) (denial of certiorari). Explaining his vote for denial of certiorari, Justice Stevens, joined by Justices Blackmun and Powell, noted that this type of claim had been raised with increasing frequency over the preceding five years (that

---

**6.** In dissent, Judge Tuttle takes a different approach, apparently equating reasonable availability of a legal challenge with high likelihood of success; if a legal challenge is likely to fail because it is contrary to precedent, he would deem it unavailable. Judge Tuttle quotes dicta from *Reed* for support. But *Reed* and *Engle* must be read together. The Supreme Court said in *Smith v. Murray:* "as a comparison of *Reed* and *Engle* makes plain, the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith,* 477 U.S. at 537, 106 S.Ct. at 2667. The *Smith* Court then went on to hold petitioner's claim unnovel because others had been raising the claim for years.

That an argument might have less than a high likelihood of success has little to do with whether the argument is available or not. An argument is available if there is a reasonable basis in law and fact for it. *Cf. Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (complaint which fails to state claim under current precedent may still have basis in law). Not all reasonable arguments can prevail. "Even those decisions rejecting the defendant's claim, of course, show that the issue had been perceived by other defendants and that it was a live one in the courts at the time." *Engle,* 456 U.S. at 131 n. 41, 102 S.Ct. at 1574 n. 41.

Even if others have not been raising a claim, the claim may still be unnovel if a review of the historical roots and development of the general issue involved indicate that petitioners did not "lack[ ] the tools to construct their constitutional claim." *Engle,* 456 U.S. at 133, 102 S.Ct. at 1574.

is, since 1978), but suggested that it would be best to let the issue percolate—"to allow the States to serve as laboratories in which the issue receives further study"—a while longer. *Id.* at 962–63, 103 S.Ct. at 2438–39.

By 1985 one federal circuit had recognized a *Batson* -type claim based on the federal constitution. *See McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984). Several states had also recognized the claim. *See, e.g., People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978) (relying on both federal and state constitutions); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979) (relying on Massachusetts Declaration of Rights). The defendants in all of these cases recognized and raised the claim, as did the defendant in *Batson,* and the defendants in *Allen v. Hardy* and *Griffith v. Kentucky* (discussed in footnote 3 above). And, as reported in *Law Week,* certiorari had in fact already been granted in *Batson* several weeks prior to petitioner Pitts' trial. *See* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985); 53 *U.S.L.W.* 3784 (Apr. 30, 1985).

Given all this activity in the area by others who perceived and litigated *Batson* -type claims, we conclude that such a claim was reasonably available to petitioner Pitts in 1985. We, therefore, hold that the *Batson* claim was not so novel that failure to

raise it in 1985 should be excused for cause.[7]

## IV.

■ Petitioner Pitts alternatively contends that if his *Batson* -type claim was reasonably available prior to the *Batson* decision, his attorney's failure to raise it rendered his assistance ineffective; and that this ineffective assistance of counsel was "cause" for the default. That counsel failed to recognize a reasonably available claim, however, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default. *Murray v. Carrier,* 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986). To constitute cause, the assistance of counsel must be constitutionally ineffective under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Carrier,* 477 U.S. at 492, 106 S.Ct. at 2647; *Hollis v. Davis,* 912 F.2d 1343, 1347 (11th Cir.1990);[8] *Pelmer v. White,* 877 F.2d 1518, 1523 (11th Cir.1989).

■ As noted in *Pelmer,* there will often be a "gap" between the spheres of novelty and ineffective assistance of counsel; "[b]ecause law is not an exact science, an ordinary, reasonable lawyer may fail to recognize or to raise an issue, even when the issue is available, yet still provide con-

---

7. We recognize, as did the Fifth Circuit in *Jones,* that the Supreme Court has stated in a different context that *Batson* was "an explicit and substantial break with prior precedent." *See Allen v. Hardy,* 478 U.S. 255, 258, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986). This description supported the *Allen* Court's holding that *Batson* should not be retroactively applied. But the question of retroactive application of Supreme Court decisions and the question of novelty of legal issues for the purpose of excusing procedural default are different questions. Retroactivity analysis focuses on administrative efficiency and the justifiable reliance of parties on the old law; novelty analysis focuses on the reasonable availability to petitioner of the opportunity to argue for or to use the new law. The same considerations of comity, finality, efficiency, and reliance which militated against retroactivity in *Allen* militate against novelty as cause here. (We note that the defendant in *Allen* had in fact moved to discharge his jury based on the prosecution's improper use of its peremptory strikes at the time of his trial, in 1981.)

8. At oral argument petitioner's counsel cited *Hollis* for the opposite proposition: that attorney failures short of constitutionally ineffective assistance *can* constitute cause. *Hollis,* an Eleventh Circuit decision, would of course be controlled by the Supreme Court's holding in *Carrier.* In any event, *Hollis* does not support petitioner's proposition; as noted above in the text, *Hollis* says that ineffective assistance must be constitutionally ineffective to constitute cause for procedural default. 912 F.2d at 1347. Petitioner's counsel may have been misled by a later paragraph suggesting that if an attorney's failure (short of ineffective assistance of counsel) to raise a claim was based on fear of community reaction, this social pressure might present an "objective factor external to the defense" sufficient to constitute cause. *Id.* at 1350. But, assuming such a context, the cause would be the "social pressure" as an "objective factor external to the defense" rather than ineffective assistance of counsel.

stitutionally effective assistance." 877 F.2d at 1523 (citing *Engle*, 456 U.S. at 133–34, 102 S.Ct. at 1575). A counsel's pre-*Batson* failure to raise a *Batson* -type claim does not fall below reasonable standards of professional competence, and thus does not render counsel's assistance constitutionally ineffective. *See Poole v. United States*, 832 F.2d 561 (11th Cir.1987). While the ability to think creatively can be a great asset to trial lawyers, lawyers rarely, if ever, are required to be innovative to perform within the wide range of conduct that encompasses the reasonably effective representation mandated by the Constitution.

### V.

In addition to arguing ineffective assistance of counsel for purposes of excusing the procedural default of his *Batson* claim, petitioner Pitts also raises ineffective assistance of trial counsel as a separate claim for relief. Because this claim is based entirely on trial counsel's failure to object to the prosecution's peremptory strikes, however, it must be rejected based on the same reasoning: an attorney's failure to raise a *Batson* -type claim before *Batson* does not fall below the range of reasonable professional competence, *see Poole*, 832 F.2d at 565, and thus cannot render otherwise effective assistance constitutionally ineffective, *see Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064.

### VI.

For these reasons, the district court's denial of Albert Pitts' habeas petition is AFFIRMED.

TUTTLE, Senior Circuit Judge, dissenting:

Respectfully, I dissent. I simply cannot agree that the new principle announced by the Supreme Court in *Batson* was not sufficiently novel to excuse court-appointed counsel in the Alabama State Court from raising a *Batson* claim on direct appeal of Pitts' conviction. I agree with the Court's statement that the novelty of a claim will constitute cause to excuse a procedural default if the legal basis for the claim was "not reasonably available to counsel."

That language is explicitly used in *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).

As stated in the majority opinion:

Neither the Supreme Court or the Eleventh Circuit has addressed whether a *Batson* claim before April 1986 was sufficiently novel to constitute cause for failing to object contemporaneously to the prosecution's use of its peremptory challenges.

That means that the duty devolves on us to decide this precise issue, because there is no dispute over whether the *Batson* decision was "novel."

The record here clearly discloses that Pitts has been denied his constitutional right to be tried by a fair jury. This Court should not lightly decide that a Supreme Court opinion that the Court has stated was "an explicit and substantial break with prior precedent" was not sufficiently novel to provide cause for Pitts' failure to raise it on his appeal.

The Court in *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), stated: "The rule in *Batson v. Kentucky* is an explicit and substantial break with prior precedent," and "*Batson* overruled that portion of *Swain*, changing the standard for proving unconstitutional abuse of peremptory challenges."

While dealing with the contention of a defendant in a criminal case that he had been represented by inefficient counsel, the Court in *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), cast considerable light on the issue of novelty as cause. The Court stated:

Counsel's failure to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar.... It is in the nature of our legal system that legal concepts, including constitution concepts, develop slowly, finding partial acceptance in some courts while meeting rejection in others. Despite the fact that a constitutional concept may ultimately enjoy general acceptance, as the *Mullaney* [*v. Wilbur*,

421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)] issue currently does, when the concept is in the embryonic stage, it will, by hypothesis, be rejected by most courts. Consequently, a rule requiring a defendant to raise a truly novel issue is not likely to serve any functional purpose. Although there is a remote possibility that a given state court will be the first to discover a latent constitutional issue and to order redress if the issue is properly raised, it is far more likely that the court will fail to appreciate the claim and reject it out of hand. Raising such a claim in state court, therefore, would not promote either the fairness or the efficiency of the state criminal justice system. It is true that finality will be disserved if the federal courts reopen a state prisoner's case, even to review claims that were so novel when the cases were in state court that no one would have recognized them. This Court has never held, however, that finality, standing alone, provides a sufficient reason for federal courts to compromise their protection of constitutional rights under § 2254.

In addition, if we were to hold that the novelty of a constitutional question does not give rise to cause for counsel's failure to raise it, we might actually disrupt state-court proceedings by encouraging defense counsel to include any and all remotely plausible constitutional claims that could, some day, gain recognition. Particularly disturbed by this prospect, Judge Haynsworth, writing for the Court of Appeals in this case, stated:

> "If novelty were never cause, counsel on appeal would be obliged to raise and argue every conceivable constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law. Appellate courts are already over-burdened with meritless and frivolous cases and contentions, and an effective appellate lawyer does not dilute meritorious claims with frivolous ones. Lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be

> legitimately regarded as debatable." [*Ross v. Reed*] 704 F.2d [705] at 708 [(4th Cir.1983)].

468 U.S. at 15, 104 S.Ct. at 2910.

The Court then made the following statement:

> Although the question whether an attorney has a "reasonable basis" upon which to develop legal theory may arise in a variety of contexts, we confine our attention to the specific situation presented here: one in which this Court has articulated a constitutional principle that had not been previously recognized but which is held to have retroactive application. In *United States v. Johnson*, 457 U.S. 537 [102 S.Ct. 2579, 73 L.Ed.2d 202] (1982), we identified three situations in which a "new" constitutional rule, representing "'a clear break with the past,'" might emerge from this Court. *Id.* at 549 [102 S.Ct. at 2586] (quoting *Desist v. United States*, 394 U.S. 244, 258–59 [89 S.Ct. 1030, 1039, 22 L.Ed.2d 248] (1969)). First, a decision of this Court may explicitly overrule one of our precedents. *United States v. Johnson*, 457 U.S. at 551 [102 S.Ct. at 2588]. Second, a decision may "overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." *Ibid.* And, finally, a decision may "disapprov[e] a practice this Court arguably has sanctioned in prior cases." *Ibid.* By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged state court to adopt the position that this Court has ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement.

*Id.* at 17, 104 S.Ct. at 2911.

Although I recognize that the *Reed* case dealt with the retroactivity of a court opinion, Pitts finds himself in the same situation as did the appellant in *Reed* because

*Batson* was applicable to any case, as Pitts', which was still on direct appeal to the Alabama Supreme Court.

It appears to me, therefore, that this language should be accepted by us to control the case now before us. I would, therefore, hold that Pitts had established the required "cause" for failing to raise the *Batson* issue in the state court in Lee County, Alabama.