Otis PETERKIN

v.

Martin HORN, et al.

No. CIV. A. 95–CV–3989.

United States District Court, E.D. Pennsylvania.

Dec. 16, 1997.

---

Billy H. Nolas, Center of Legal Education, Advocacy & Defense Assistance, Philadelphia, PA, for Plaintiff.

Donna G. Zucker, Philadelphia Dist. Attorney's Office, Federal Litigation, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Petitioner, a death-row prisoner, has moved to amend his petition for habeas corpus relief to include a claim pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). For the reasons set forth below, the motion is denied.

### Factual and Procedural Background

In September, 1982, Petitioner was tried and convicted in the Court of Common Pleas of Philadelphia County of two counts of first degree murder, robbery and possession of an instrument of crime as the result of the November 29, 1981 robbery and murder of two employees of the Sunoco service station located at Broad and Catherine Streets in South Philadelphia. At the conclusion of the penalty phase of the trial, Mr. Peterkin was sentenced to death. His conviction was subsequently appealed to the Pennsylvania Supreme Court, which affirmed.

In 1987, the United States Supreme Court denied certiorari and petitioner thereafter filed for relief under the Pennsylvania Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et seq.* raising numerous claims of ineffective assistance of counsel. Following the trial court's denial of that petition, the matter was once again appealed directly to the Pennsylvania Supreme Court pursuant to 42 Pa.C.S. § 9546(d)[1], which again affirmed the trial court in an opinion issued on October 12, 1994. The United States Supreme Court likewise denied Mr. Peterkin's petition for writ of certiorari by order dated June 12,

---

**1.** Prior to amendment in 1995, "[a] final order under [the PCRA] in a case in which the death penalty has been imposed shall be directly ap-pealable only to the Supreme Court pursuant to its rules." 42 Pa.C.S. § 9546(d).

1995. Petitioner commenced this habeas corpus action on June 27, 1995 with a request for appointment of counsel. This request was granted and appointed counsel filed a Petition for Writ of Habeas Corpus in this Court on December 5, 1996. This motion to amend was thereafter filed on April 23, 1997.

### Standards Governing Motions to Amend

As a threshold matter, we note that in the time between petitioner's commencement of this habeas action by filing a request for appointment of counsel and the actual filing of the petition itself, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). This Act, which took effect on April 24, 1996, amended the federal habeas statute in several ways. Among these changes, the standards for reviewing state court rulings on legal issues and mixed questions of law and fact and the time within which habeas petitions could be filed and ruled upon, were altered. *See, e.g.,* 28 U.S.C. §§ 2254, 2261–2266. Similarly, under 28 U.S.C. § 2266(b)(3)(B), "[n]o amendment to an application for a writ of habeas corpus under this chapter [governing habeas corpus in capital cases] shall be permitted after the filing of the answer to the application, except on the grounds specified in section 2244(b)." [2]

The question of whether these amendments are to be applied retroactively to pending cases depends upon the chapter under which the amendments at issue were drafted. In *Lindh v. Murphy,* — U.S. —, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), the Supreme Court, finding that chapters 153 and 154 of the Act would have substantive as well as purely procedural effects and that the notes and legislative history underlying chapter 154 reflected the intention that it be given retroactive application, observed that chapter 153's legislative history did not echo this intention. Thus, by negative implication, except where chapter 154 otherwise makes select provisions of chapter 153 applicable to pending cases, the amendments to chapter 153 "were meant to apply to the general run of habeas cases only when those cases had been filed after the date of the Act..." — U.S. at ——, ——, 117 S.Ct. at 2063, 2068. *See Also: United States v. Skandier,* 125 F.3d 178, 180 (3rd Cir.1997).

The case at hand is unique and appears to be one of first impression in that it was commenced not by the filing of a petition for habeas corpus itself but by a request for appointment of counsel to, *inter alia,* assist in the preparation of such a petition. The waters are further muddied by the fact that while the amendments to § 2266 were promulgated under chapter 154, the amendments to § 2244 were made a part of chapter 153. Saving for the moment our determination of which version of the habeas statute to apply, we shall give petitioner the benefit of the doubt and resolve this motion under a rules analysis.

Under 28 U.S.C. § 2242, applications for writ of habeas corpus may be amended or supplemented as provided in the rules of procedure applicable to civil actions. Amendment of pleadings generally is governed by Fed.R.Civ.P. 15. Subsection (a) of that rule provides, in relevant part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires...

 This rule has long been construed as supportive of liberal amendments of plead-

---

**2.** 28 U.S.C. § 2244(b) applies to habeas claims presented in second or successive habeas corpus applications. That subsection requires that the applicant show either (1) that the claim relies on a new claim of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or (2) that the factual predicate for the claim could not

have been discovered previously through the exercise of due diligence and that the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

ings so as to foster the resolution of cases on their merits, rather than on the basis of mere technicalities. *See: Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The decision to grant or deny a motion to amend rests with the discretion of the trial court but courts should use strong liberality in considering whether to grant leave to amend. *Dole v. Arco Chemical Co.,* 921 F.2d 484, 486–487 (3rd Cir.1990). In capital cases, district courts should be particularly favorably disposed toward a petitioner's motion to amend. *Moore v. Balkcom,* 716 F.2d 1511, 1527 (11th Cir.1983). Thus, a refusal of a motion to amend must be justified. Permissible justifications include: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposition; (4) repeated failures to correct deficiencies with previous amendments; and (5) futility of the amendment. *Riley v. Taylor,* 62 F.3d 86, 90 (3rd Cir.1995), citing, *inter alia, Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3rd Cir.1993). *See Also: Ryan v. Hopkins,* 1996 WL 539220 (D.Neb. 1996).

### Discussion

As noted above, petitioner is now seeking leave to amend his habeas petition to assert, for the first time, that his constitutional rights under the sixth, eighth and fourteenth amendments were violated because the Commonwealth exercised its peremptory challenges to the jury panel in a racially discriminatory manner. Mr. Peterkin asserts that this claim was not previously available to him as he only recently learned though Philadelphia District Attorney Lynne Abraham's dissemination of a training videotape that the Philadelphia District Attorney's Office at one time trained its assistant district attorneys to use peremptory strikes in a racially discriminatory manner.

■ In deciding *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),

the United States Supreme Court altered the standard of proof needed to make out a claim of purposeful discrimination in the selection of petit juries that had previously been articulated in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).[3] Now, under *Batson,* to establish such a claim, a three-step process applies. First, the defendant must make a prima facie showing of a violation. Second, if the defendant succeeds, the prosecution must articulate a race-neutral explanation for the manner in which he exercised his peremptory challenges. Finally, the trial court must determine whether the defendant has proven purposeful discrimination. *Simmons v. Beyer,* 44 F.3d 1160, 1167 (3rd Cir.1995), citing *United States v. Uwaezhoke,* 995 F.2d 388, 392 (3rd Cir.1993) and *Hernandez v. New York,* 500 U.S. 352, 358–359, 111 S.Ct. 1859, 1865–1866, 114 L.Ed.2d 395 (1991).

■ In evaluating whether a defendant has made the requisite prima facie showing, the following five factors are properly considered: (1) the number of racial group members in the panel; (2) the nature of the crime; (3) the race of the defendant and the victim; (4) a pattern of strikes against racial group members, and (5) the prosecution's questions and statements during voir dire. *Simmons, supra,* citing *United States v. Clemons,* 843 F.2d 741 (3rd Cir.1988), *cert. denied,* 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988). *See Also: Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1723.

*Batson,* however, was silent as to whether these new standards were to be applied to litigation pending on direct state or federal review or to cases not yet final when *Batson* was issued. These questions were subsequently resolved in *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) and *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

---

**3.** As noted by the *Batson* court, in *Swain,* the Supreme Court recognized that a "State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause." 476 U.S. at 83–85, 106 S.Ct. at 1716 quoting *Swain* at 380 U.S. at 203–204, 85

S.Ct. at 826–827. *Swain,* of course, was an extension of *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1879), which held that the State denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposefully excluded.

In *Allen,* the Supreme Court addressed the question of whether the *Batson* standards should be applied on a habeas corpus petition to overturn a final 1981 murder conviction. In answering this question in the negative the Court laid down the general rule that *Batson* was not to be applied retroactively on collateral review of convictions that became final before the decision was announced. However, the Court expressly reserved decision on whether its rule of nonretroactivity was to be applied to cases that were pending on direct appeal at the time *Batson* was announced, defining "final" to mean "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision [in *Batson* was rendered]." 478 U.S. at 255, note 1, 106 S.Ct. at 2880, note 1.

The *Griffith* Court, in turn, was confronted with the issue of whether the *Batson* ruling was applicable to litigation pending on direct state or federal review or to cases not yet final when *Batson* was decided. *Griffith* answered this question affirmatively and held that *Batson*'s "new rule for the conduct of criminal prosecutions [was] to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 479 U.S. at 314, 107 S.Ct. at 716.

■ Following the holdings in *Allen* and *Griffith* and mindful that Mr. Peterkin's case was pending before the Pennsylvania Supreme Court on direct review at the time *Batson* was decided and did not become final until January 27, 1987 when the U.S. Supreme Court denied his petition for writ of certiorari, we conclude that the *Batson* standards for determining whether the prosecutor's challenges in this case were used in a racially discriminatory manner must be applied. *See Also: Pitts v. Cook,* 923 F.2d 1568 (11th Cir.1991).

This does not end our inquiry, however. We next must determine whether petitioner has preserved his *Batson* claim for review. *See, e.g.: Simmons, supra,* at 1166.

■ Generally, a § 2254 petition which includes any unexhausted claims must be dismissed without prejudice for failure to exhaust all state created remedies unless procedurally barred. *Doctor v. Walters,* 96 F.3d 675, 678, 681 (3rd Cir.1996), citing *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). To satisfy the exhaustion requirement, the petitioner must present every claim raised in the federal petition to each level of the state courts. *Id.,* citing, *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

■ As noted, an exception to the general rule requiring dismissal of a habeas petition where state remedies have not been exhausted exists where the unexhausted claims are procedurally barred. Just as in those cases where a state prisoner has failed to exhaust state remedies, a habeas petitioner who has failed to meet the state's procedural requirements for presenting his federal claims in state court has deprived the state courts of an opportunity to address those claims in the first instance. In this way, a habeas petitioner who has procedurally defaulted his federal claims in state court meets the technical requirements for exhaustion in that there are no state remedies any longer available to him. *Coleman v. Thompson,* 501 U.S. 722, 731–732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Toulson v. Beyer,* 987 F.2d 984, 987 (3rd Cir.1993). As exhaustion would be futile, it is excused. *See: Doctor v. Walters,* at 681.

■ Nevertheless, a petitioner is entitled to federal review of procedurally defaulted claims if, but only if, he can demonstrate (1) that the procedural rule was not independent and adequate; or (2) cause for his failure to comply with state procedural rules and prejudice resulting therefrom. *Doctor v. Walters,* 96 F.3d at 683, citing *Harris v. Reed,* 489 U.S. 255, 260–261, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989) and *Reynolds v. Ellingsworth,* 843 F.2d 712, 717 (3rd Cir.), *cert. denied,* 488 U.S. 960, 109 S.Ct. 403, 102 L.Ed.2d 391 (1988). *See Also: Carpenter v. Vaughn,* 888 F.Supp. 635, 646 (M.D.Pa.1994).

■ In the case now before us, the parties acknowledge that petitioner's *Batson*

claim has been procedurally defaulted and he no longer has any remedies available on either direct or collateral review in the state court system. Petitioner contends, however, that he should now be entitled to federal review of this claim because it was only through the very recent dissemination of the district attorneys' office's training videotape that he learned that a claim under *Batson* existed.

■■■■ To parlay this contention into a ground for relief, however, petitioner must show that some external impediment prevented this claim from being constructed or raised at an earlier stage of the proceedings. *See: Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647–2648, 91 L.Ed.2d 397 (1986). In addition, petitioner must also show not merely that the errors at trial created a possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *Id.,* 477 U.S. at 494, 106 S.Ct. at 2648. *See Also: United States v. Frady,* 456 U.S. 152, 169, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982). Stated otherwise, while federal courts at all times retain the power to look beyond state procedural forfeitures, the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for non-compliance with the state rule and "actual prejudice resulting from the alleged constitutional violation." *Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 2665–2666, 91 L.Ed.2d 434 (1986) citing, *Wainwright v. Sykes,* 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977).

■■■ It is true that one such objective, external factor which has been held sufficient to excuse procedural default is the novelty of a constitutional issue at the time of the state court proceeding. *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984). The novelty of a claim will constitute cause sufficient (when joined with actual prejudice) to excuse procedural default if the legal basis

for the claim was not reasonably available to counsel or if petitioner's counsel lacked the tools to construct the constitutional claim. *Pitts v. Cook, supra,* 923 F.2d at 1572.

In carefully scrutinizing Mr. Peterkin's motion to amend, although similar to a "novel claim" argument, he instead assigns as cause for his procedural default and the more than ten-year delay in challenging the prosecutor's use of peremptory challenges, the recently disclosed information about the training videotape made by former Assistant District Attorney Jack McMahon.[4] To reiterate, however, under *Batson,* petitioner must establish a prima facie case of purposeful discrimination in the exercise of peremptory challenges by showing that the prosecutor used peremptory challenges to remove from the venire a member or members of a particular racial group during the course of trial. *Deputy v. Taylor,* 19 F.3d 1485, 1492 (3rd Cir.1994), *cert. denied,* 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994). In determining whether a defendant has presented a prima facie *Batson* issue, the following five factors are properly examined: (1) the number of members of the cognizable racial group in the venire group from which the petit jury is chosen; (2) the nature of the crime; (3) the race of the defendant and the victim; (4) the pattern of strikes against racial group jurors in the particular venire; and (5) the prosecutor's statements and questions during selection. *Id.,* citing *Jones v. Ryan,* 987 F.2d 960, 970 (3rd Cir.1993).

In reviewing Mr. Peterkin's motion to amend in accordance with the above-stated principles, we find that it neither alleges any facts which could support a finding that he could make out a prima facie case under *Batson* nor does it allege how this videotape caused petitioner to be prejudiced in his trial. With the exception of a quick reference to the nature of the crime and to petitioner's race, nothing at all is pled as to the first,

---

4. Indeed, a "novel claim" argument would clearly be inappropriate given that since at least 1880 the law has recognized the unconstitutionality of putting a defendant on trial before a jury from which members of his race have been purposefully excluded. It is therefore axiomatic that

petitioner's counsel had the tools to challenge the prosecutor's use of his peremptory challenges at the time of trial in 1981 and certainly at the time the PCRA petition was filed in 1987. *See: Swain v. Alabama* and *Strauder v. West Virginia,* both *supra.*

fourth and fifth factors in the *Jones /Deputy* test.

Instead, petitioner asks this Court to assume prejudice from the mere existence of the videotape. Petitioner does not allege that the prosecutor in this case was trained through the use of the videotape and he does not aver that the videotape was even in existence at the time he was tried in 1981. Moreover, and even accepting petitioner's argument as true that the prosecutor in this case was so trained, that fact alone does not automatically translate to a finding that he adhered to that training in selecting the jury in this case. Indeed, the caselaw is replete with examples of instances in which law enforcement personnel have failed to adhere to their training. *See, e.g.: City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Simply stated, as there is nothing from which a causal nexus between the videotape and the selection of petitioner's jury in this case can be inferred, we cannot find that Mr. Peterkin has satisfied the "cause and prejudice" criteria for excusing procedural default or that a prima facie case of discrimination under *Batson* could be established. Granting petitioner leave to amend his petition for habeas corpus relief would therefore be futile under Fed.R.Civ.P 15 and, for this reason, his motion to do so shall be denied pursuant to the attached order.

### ORDER

AND NOW, this 16th day of December, 1997, upon consideration of Petitioner's Motion to Amend his Petition for Habeas Corpus and Respondents' Answer thereto, it is hereby ORDERED that the Motion to Amend is DENIED.