KEITH, Circuit Judge,
dissenting.
The majority’s interpretation of Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), in line with Eleventh Circuit precedent, would require defense counsel to anticipate and articulate constitutional arguments that are contrary to controlling Supreme Court precedent. See, e.g., Pitts v. Cook, 923 F.2d 1568, 1571 (11 th Cir.1991). This reading is not only unfounded but also poses worrying policy concerns. Because counsel’s failure to articulate a Blakely claim prior to Blakely, itself, constitutes sufficient cause to excuse procedural default, I respectfully dissent.
The majority cites the Eleventh Circuit for the proposition that cases involving cause for procedural default are governed by a different and more difficult standard *841 than those challenging the adequacy of counsel’s performance. Id. Under the latter, counsel’s failure to predict changes in constitutional law is not error. See United States v. Burgess, 142 Fed.Appx. 232, 241 (6th Cir.2005) (citing Fuller v. United States, 398 F.3d 644, 651 n. 4 (7th Cir.2005)). Under the former, counsel must advance federal constitutional claims in state courts if fellow attorneys have done so. Smith v. Murray, 477 U.S. 527, 535, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). The majority contends that the duty holds even if no court in the nation has credited the claim.[1] However, the Supreme Court could not have intended that defense counsel be required to advance actually futile claims.
In support of its view, the majority notes that “futility cannot constitute cause if it means simply that a claim was ‘unacceptable to [a] particular court at [a] particular time.’ ” Engle, 456 U.S. at 130 n. 35, 102 S.Ct. 1558 (emphasis added). Yet, even two years after Apprendi, every federal circuit upheld judicial fact-finding as an acceptable means of enhancing a sentence within the prescribed Guidelines range. See, e.g., United States v. Leachman, 309 F.3d 377 (6th Cir.2002) (collecting cases). Such unanimity at the federal level is quite a different beast than “the futility of presenting an objection to the state courts.” Engle, 456 U.S. at 130, 102 S.Ct. 1558. Further, such unanimity was not present in Engle, wherein “numerous courts [had] agreed” that the defendant’s lead argument, that “the Due Process Clause requires the prosecution to bear the burden of disproving certain affirmative defenses,” was colorable. 456 U.S. at 133, 102 S.Ct. 1558. The Engle Court warned the defendant who “perceives a constitutional claim and believes it may find favor in the federal courts” not to “bypass the state courts simply because he thinks they will be unsympathetic to the claim.” 456 U.S. at 130, 102 S.Ct. 1558 (emphasis added). Here, Cvijetinovic was sentenced below the statutory maximum though his sentence was increased on the basis of judicially-found facts. He simply had no claim in a pre-Blakely world. I would therefore “hesitate to adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the hope that some aspect might mask a latent constitutional claim.” Engle, 456 U.S. at 131, 102 S.Ct. 1558.
To that end, I believe the majority too quickly disposes of the argument that its holding will compromise judicial economy. To preserve claims on appeal, even futile ones, defense counsel must serve as both representative and prophet. Their briefs become experiments in, rather than mere exercises of, advocacy. One commentator has indicated that “encouraging prisoners to repeatedly urge state judges to rethink old precedents shows little respect for state courts and their decisions, but instead encourages defense counsel to raise issues the state courts consider settled, thereby wasting judicial time and resources and perhaps exacerbating federal-state tensions.” Kit Kinports, Habeas Corpus, Qualified Immunity, and Crystal Balls: Predicting the Course of Constitutional Law, 33 Ariz. L.Rev. 115, 135 (1991). Accordingly, I agree with Judge Woods’s prediction that “defense counsel will have no choice but to file one ‘kitchen sink’ brief after another, ... based on long-term logical implications from existing precedents.” United States v. Smith, 250 F.3d 1073, 1077 (7th Cir.2001). The potential conse *842 quences of requiring “a virtually omniscient counsel in the cause sphere” are serious, because the requirement makes it more likely that procedural deficiencies will trump a prisoner’s meritorious assignments of constitutional error. See Yale L. Rosenberg, Constricting Federal Habeas Corpus: From Great Writ to Exceptional Remedy, 12 Hastings Const. L.Q. 597, 627 (1985). Arguing that mention of “kitchen sink briefs” is “beside the point,” the majority cites Brent E. Newton, An Argument for Reviving the Actual Futility Exception to the Supreme Court’s Procedural Default Doctrine, 4 J.App. Prac. & Process 521, 544 (2002) (hereinafter “Reviving”). However, that author’s analysis might well compel a result other than that reached here. “Logically and equitably,” Newton writes, “actual futility—as opposed to a defendant’s mere perception of futility when in fact an objection would not necessarily have been futile—should excuse a procedural default.” Id. (emphasis added). “If, however, a court before which a defendant appears has the power to grant relief on particular claim of error (ie., a superior court addressing the same issue has not already ruled that such a claim lacks merit), then the futility exception should not apply.” Id. Cvijetinovic’s second direct appeal became final on May 26, 2004, just nine days prior to the Supreme Court’s decision in Blakely. The Ohio courts to which Cvijetinovic appealed roundly rejected Blakely-like arguments before Blakely was handed down. See, e.g., State v. Neal, No.2001CA00067, 2001 WL 1771034, at *3 (Ohio Ct.App. August 31, 2001); State v. Johnson, Nos. L-00-1327, L-00-1326, L-00-1325, 2001 WL 256181, at *2 (Ohio CtApp. March 16, 2001). It follows that Cvijetinovic’s strongest argument, that the statute under which he was sentenced was unconstitutional, was actually futile. Newton writes that “no legitimate governmental interest would be served by requiring an objection” where a “state or federal trial court would be utterly powerless to grant any relief on the objection,” and indicates that “a state or federal appellate court—even a state supreme court or en banc United States Court of Appeals—would be without power to overrule precedent of the United States Supreme Court.” Reviving, 4 J.App. Prac. & Process at 555. It follows that the majority’s own authority cuts in Cvijetinovic’s favor on policy grounds.
Finally, the aforementioned competing standards seem to disaggregate the counsel-client relationship. In Burgess, for example, we noted that “[a]s a matter of law, there simply is no basis for Burgess’s assertion that his counsel’s failure to predict th[e] novel line of authority [stemming from Blakely ] ‘fell below an objective standard of reasonableness.’”[2] Burgess, 142 Fed.Appx. 232, 241. Counsel’s boon is his client’s burden. Where, as here, counsel advances a Blakely claim only after Blakely, itself, was decided, the client pays the price of his freedom. I submit that requiring prescience in cases involving a question of cause, while excusing lack of *843 prescience in cases involving the ineffective assistance of counsel, establishes a potentially inconsistent framework for the adjudication of habeas claims. For these reasons, I respectfully dissent.

. Significantly, this Circuit has never before specifically addressed whether failure to present an argument to expand Apprendi prior to Blakely precludes the defendant from establishing “cause” in the habeas context.

. See also, e.g., United States v. McDaniel, 398 F.3d 540, 547 (6th Cir.2005) (collecting cases in which failure to raise Apprendi prior to Blakely was not bar to defendants challenging their sentence posi-Blakely); and United States v. Stines, 313 F.3d 912, 917 (6th Cir.2002) ("[i]t would have been impossible for the defendants to have intentionally relinquished or abandoned their Apprendi claims considering Apprendi was decided after they were sentenced”). And in Foster, the Ohio Supreme Court noted that "no one could have predicted that Blakely would extend the Apprendi doctrine to redefine 'statutory maximum.’” Foster, 109 Ohio St.3d at 11, 845 N.E.2d 470. I therefore find persuasive the notion that "a claim is not reasonably available, without more, when tire claim is based on the Supreme Court’s intervening overruling of its own precedent.” Richardson v. McCann, 653 F.Supp.2d 831, 844 (N.D.Ill. 2008).