RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

ALEXSANDAR CVIJETINOVIC,
    *Petitioner-Appellee,*

  *v.*

No. 08-3629

MICHELLE EBERLIN, Warden,
    *Respondent-Appellant.*

――――――――――――

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-02555—Kathleen McDonald O'Malley, District Judge.

Argued: March 4, 2010

Decided and Filed: August 23, 2010

Before: KEITH, BOGGS, and GRIFFIN, Circuit Judges.

―――――――――――

## COUNSEL

**ARGUED:** Jerri L. Fosnaught, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Aaron Aldridge, Lebanon, Ohio, for Appellee. **ON BRIEF:** Jerri L. Fosnaught, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellee.

  BOGGS, J., delivered the opinion of the court, in which GRIFFIN, J., joined. KEITH, J. (pp. 11-14), delivered a separate dissenting opinion.

――――――――――――

## OPINION

――――――――――――

  BOGGS, Circuit Judge. Warden Michelle Eberlin appeals the district court's order conditionally granting Ohio prisoner Alexsandar Cvijetinovic's petition for a writ of habeas corpus. In the petition, Cvijetinovic claimed that his presumptive sentence

was enhanced on the basis of judge-found facts, a practice forbidden by the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). Though it determined that Cvijetinovic's *Blakely* claim was procedurally defaulted, the district court granted relief, holding that he had established cause and prejudice. The district court's conclusion with respect to cause was premised on the notion that, at the time of his default, the legal basis for Cvijetinovic's claim was not reasonably available. However, the principle at the heart of *Blakely* had already been articulated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which spawned myriad *Blakely*-type claims in the months preceding Cvijetinovic's appeal. We therefore reverse.

I

On January 19, 1999, Cvijetinovic pleaded guilty in the Cuyahoga County Court of Common Pleas "to multiple charges related to armed robberies he committed around 1998." *Cvijetinovic v. Eberlin*, 617 F. Supp. 2d 620, 625 (N.D. Ohio 2008). In addition, he pleaded guilty "to an intimidation charge related to threats directed toward his girlfriend in the aftermath of his arrest." *Ibid.* Approximately one month later, Cvijetinovic was sentenced "to an aggregate prison term of sixteen years, including terms exceeding the statutory minimum based on judicial fact-finding, consecutive terms of imprisonment, and mandatory firearms specifications." *Ibid.*

On July 12, 2002, Cvijetinovic filed his first direct appeal, challenging both his convictions and his sentence. *See id.* at 626. The Ohio Court of Appeals for the Eighth District affirmed his convictions but remanded for re-sentencing. At the time, Ohio Rev. Code § 2929.14(B) established a presumption that an offender would be sentenced to the statutory minimum.[1] A trial court could impose a harsher sentence only if the offender had been previously been incarcerated, *see* Ohio Rev. Code § 2929.14(B)(1), or the trial court "f[ound] on the record that the shortest prison term w[ould] demean the seriousness of the offender's conduct or w[ould] not adequately protect the public from future crime

---

[1]That presumption had since been abolished. *See State v. Foster*, 845 N.E.2d 470, 475 (Ohio 2006). Trial courts now have untrammeled discretion to impose any sentence within the statutory range. *See id.* at 476.

by the offender or others." *Id.* at § 2929.14(B)(2).  Because Cvijetinovic had no prior record, the trial court was required to make one of the aforementioned findings in order to justify the sentence it imposed.  The Ohio Court of Appeals held that it did not.

On remand, the trial court rectified its error, holding that "[i]mposing minimum sentence on an eighteen year old drug crazed alcoholic would seriously not adequately protect the community from future crime."  After making the requisite finding, the trial court again imposed a sentence of sixteen years of imprisonment.  Cvijetinovic appealed, but this time the Ohio Court of Appeals affirmed.  A subsequent appeal to the Ohio Supreme Court was dismissed as not involving any substantial constitutional question.

On June 24, 2004, the United States Supreme Court handed down its decision in *Blakely*.  Two months later, Cvijetinovic timely petitioned the Supreme Court for a writ of certiorari, arguing for the first time that his non-minimum sentence had been unconstitutionally imposed on the basis of judge-found facts.  *See Cvijetinovic*, 617 F. Supp. 2d at 635.  The petition was denied.  *See Cvijetinovic v. Ohio*, 543 U.S. 935 (2004)

Cvijetinovic then pursued collateral review at the federal level, petitioning the United States District Court for the Northern District of Ohio for a writ of habeas corpus. He asserted four grounds for relief, and each was dismissed, save one: a *Blakely* claim. *See Cvijetinovic*, 617 F. Supp. 2d at 654.

In analyzing this claim, the district court noted that *Blakely* was decided before Cvijetinovic's conviction became final, concluding that the claim was therefore cognizable.  *See id.* at 635.  However, given Cvijetinovic's failure to raise the claim at the state level, the district court also concluded that it was procedurally defaulted under Ohio's doctrine of *res judicata*.  *See id.* at 636.[2]  The district court nonetheless proceeded to the merits of the claim, holding that Cvijetinovic could show cause and prejudice to excuse the default.  *See id.* at 636–46.  Addressing the underlying constitutional issue, the district court held that Cvijetinovic was sentenced under

---

[2]"Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (citing *Ohio v. Cole*, 443 N.E.2d 169, 171 (1982)).

provisions of Ohio's sentencing scheme that "permitted sentencing enhancements based on judicial fact-finding, and thus violate[d] *Blakely*." *Id.* at 647. After finding that this error was not harmless, *see id.* at 649, the district court ordered Cvijetinovic re-sentenced within ninety days or released from incarceration, *see id.* at 654.

The warden now appeals.

II

"In appeals of federal habeas corpus proceedings, we review the district court's legal conclusions *de novo* and its factual findings under a 'clearly erroneous' standard." *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999) (citing *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998)); *see also Moore v. Haviland*, 531 F.3d 393, 401 (6th Cir. 2008) ("We review a district court's legal conclusions in a habeas petition de novo."). Accordingly, "we review the district court's decision applying the 'cause and prejudice' rules to the 'procedural bar' issues *de novo*." *Lucas*, 179 F.3d at 416 (citing *Lusk v. Singletary*, 112 F.3d 1103, 1105 (11th Cir. 1997)); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("The district court's determination regarding procedural default and its resolution of whether 'cause and prejudice' exist to excuse the default are . . . subject to de novo review.").

III

It is undisputed that Cvijetinovic procedurally defaulted his *Blakely* claim, *see* Appellee's Br. at 9 ("Appellee admits that he did not present his Sixth Amendment claim to the state court."), a circumstance that typically precludes federal habeas review, *see Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ("If a habeas corpus petitioner is barred from presenting one or more of his claims to the state courts because of procedural default, he has waived those claims for purposes of federal habeas corpus review . . . ."). However, "[w]hen a habeas claim is procedurally defaulted, it may nevertheless be considered if the petitioner shows 'cause for the procedural default and prejudice attributable thereto . . . .'" *Burroughs v. Makowski*, 411 F.3d 665, 667 (6th Cir. 2005) (quoting *Murray v. Carrier*, 477 U.S. 478, 484 (1986)); *see also Hall v. Vasbinder*, 563

F.3d 222, 236 (6th Cir. 2009) ("A defendant can overcome a procedural default by showing (a) cause for the default and (b) actual prejudice from it."). Consequently, we may only affirm the district court's judgment if we are satisfied that Cvijetinovic has demonstrated both cause and prejudice.[3] Ultimately, we are not so persuaded.

Our inquiry begins and ends with the issue of cause. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488; *see also Shorter v. Ohio Dep't of Rehab. & Corr.*, 180 F.3d 723, 726 (6th Cir. 1999) (noting that petitioner had failed to demonstrate cause because his "[c]ounsel's efforts to comply with the State's procedural rule were not impeded by some objective factor external to the defense"). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'" *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (quoting *McClesky v. Zant*, 499 U.S. 467, 493–94 (1991)).

Invoking the third factor, Cvijetinovic contends that cause exists because, at the time of his default, his *Blakely* claim was "so novel that its legal basis [was] not reasonably available . . . ." *Reed v. Ross*, 468 U.S. 1, 16 (1984). "A claim may be held sufficiently novel when, at the time of its default, the legal tools, *i.e.*, case law, necessary to conceive and argue the claim were not yet in existence and available to counsel." *Poyner v. Murray*, 964 F.2d 1404, 1424 (4th Cir. 1992) (citing *Engle v. Isaac*, 456 U.S. 107, 130–33 (1982)); *see also McBee v. Grant*, 763 F.2d 811, 816 (6th Cir. 1985) (noting that a finding of cause on the basis of novelty is inappropriate where, prior to defaulting

---

[3]Cvijetinovic disputes the necessity of resolving this issue, arguing that a petitioner "does not need to prove cause and prejudice where the new constitutional rule was promulgated while [his] case was not yet final." Appellee's Br. at 13. He bases this contention on the Supreme Court's decision in *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), which held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . ." However, as the Fifth Circuit has noted, "[p]rocedural default rules are not trumped by the retroactivity of later decided cases." *United States v. McCrimmon*, 443 F.3d 454, 462 n.44 (5th Cir. 2006); *see also United States v. Levy*, 391 F.3d 1327, 1329 (11th Cir. 2004) (en banc) ("[T]he rules of retroactivity *are* subject to established principles of procedural default, waiver, and the like."). As a result, if Cvijetinovic cannot establish cause and prejudice to excuse his procedural default, *Blakely*'s retroactivity is immaterial to the disposition of this case.

his constitutional claim, the defendant had "the tools to construct [it]" (quoting *Engle v. Isaac*, 456 U.S. at 133)). "[W]here other defense counsel have raised the claim, the issue can hardly be novel[.]" *Wheeler v. United States*, 329 F. App'x 632, 636 (6th Cir. 2009) (discussing *Bousley v. United States*, 523 U.S. 614, 623 n.2 (1998)); *see also Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1998) ("[W]e note that a claim is not novel if 'other defense counsel have perceived and litigated that claim.'" (quoting *Engle*, 456 U.S. at 134)).

In light of these principles, Cvijetinovic's *Blakely* claim was not novel in a way that warrants a finding of cause. The instruments necessary for the construction of such a claim were furnished in *Apprendi*, which was handed down more than two years in advance of Cvijetinovic's initial appeal.[4] In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 466. This holding was predicated on a simple premise, namely, "that it is wrong to convict a person of one crime and impose punishment for another[.]" Erwin Chemerinsky, *Supreme Court Review: A Dramatic Change in Sentencing Practices*, 36 Trial 102, 104 (Nov. 2000). As numerous commentators quickly recognized, the rationale for the holding in *Apprendi* also supported the eventual holding in *Blakely*,[5] wherein the Court announced "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may

---

[4]The Supreme Court decided *Apprendi* on June 26, 2000, whereas Cvijetinovic's first appeal was not initiated until July 12, 2002.

[5]In the words of one such commentator, "[t]he Court's rationale [in *Apprendi*] would seem to support the proposition that any factual determination subjecting the criminal defendant to greater punishment or stigma should be determined by a jury under the reasonable doubt standard, even if the defendant's increased punishment remains within the statutory sentencing range." Erron W. Smith, Note, Apprendi v. New Jersey: *The United States Supreme Court Restricts Judicial Sentencing Discretion and Raises Troubling Constitutional Questions Concerning Sentencing Statutes and Reforms Nationwide*, 54 Ark. L. Rev. 649, 692 (2001); *see also* Justin A. Thornton & Mark H. Allenbaugh, *Apprendicitis: A Troubling Diagnosis for the Sentencing of Hackers, Thieves, Fraudsters, and Tax Cheats*, 9 Geo. Mason L. Rev. 419, 420 (2000) ("[T]he implications of *Apprendi*'s rationale are . . . far-reaching."). Indeed, Justice O'Connor suggested as much in her *Apprendi* dissent. Forecasting the decision's consequences, Justice O'Connor noted that *Apprendi*'s "most significant impact . . . will be a practical one—its unsettling effect on sentencing conducted under current federal and state determinate-sentencing schemes. . . . [T]he Court does not say whether these schemes are constitutional, but its reasoning strongly suggests that they are not." 530 U.S. at 550–51 (O'Connor, J., dissenting).

impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U.S. at 303 (citing *Ring v. Arizona*, 536 U.S. 584, 602 (2002)). Thus, after *Apprendi*, defense counsel were armed with the weapon they needed to attack the constitutionality of sentencing enhancements imposed on the basis of judge-found facts.[6]

And many defense counsel did. Indeed, *Apprendi* spurred many *Blakely*-type claims in fora across the country. *See, e.g., Sexton v. Kemna*, 278 F.3d 808, 814 n.5 (8th Cir. 2002) ("[Defendant] also argues that his [state] sentence was based upon 'sentencing factors' not proved beyond a reasonable doubt, contrary to [*Apprendi*]."); *Arizona v. Cox*, 37 P.3d 437, 441–42 (Ariz. Ct. App. 2002) ("Relying on [*Apprendi*], Appellant argues that he is entitled to a jury trial on the § 13-604.2(B) allegation."); *Oregon v. Dilts*, 39 P.3d 276, 279 (Or. Ct. App. 2002) ("According to defendant, under the sentencing guidelines, in the absence of substantial and compelling reasons to depart from a presumptive sentence, the prescribed statutory maximum for a crime is the presumptive sentence."). Even more telling, however, is the fact that a number of attorneys asserted that Ohio Rev. Code § 2929.14(B)—the very provision under which Cvijetinovic's presumptive sentence was increased—was unconstitutional in the wake of *Apprendi*. *See, e.g., State v. Neal*, No. 2001CA00067, 2001 WL 1771034, at *3 (Ohio Ct. App. August 13, 2001) ("Appellant maintains R.C. 2929.14(B) is unconstitutional in light of the United States Supreme Court's holding in *Apprendi*[.]"); *State v. Johnson*, Nos. L-00-1327, L-00-1326, L-00-1325, 2001 WL 256181, at *2 (Ohio Ct. App. March 16, 2001) (dismissing as moot appellant's argument that *Apprendi* rendered § 2929.14(B) unconstitutional). Given the prevalence of this argument prior to the

---

[6]Determining that Cvijetinovic's *Blakely* claim was nonetheless unavailable, the district court pointed to our decision in *United States v. Burgess*, 142 F. App'x 232, 240 (6th Cir. 2005), in which we held that "trial counsel cannot be deemed ineffective for failing to anticipate the Supreme Court's . . . holding in *Blakely* that the Sixth Amendment precluded the imposition of a sentence . . . based on facts not found by a jury or admitted by the defendant." However, "the standard for 'cause' to excuse a procedural default differs from the standard for objective unreasonableness of counsel." *Pitts v. Cook*, 923 F.2d 1568, 1571 (11th Cir. 1991) (citing *Pelmer v. White*, 877 F.2d 1518, 1521–23 (11th Cir. 1989)). The gap in these standards means that a legal theory may simultaneously be "not so novel as to excuse procedural default . . . [and] not so established that failure to raise [it] constitute[s] ineffective assistance of counsel[.]" *Id.* at 1571–72 (discussing *Pelmer*, 877 F.2d at 1521–23). *Burgess* is consequently immaterial to the question whether Cvijetinovic had cause for procedurally defaulting his *Blakely* claim.

commencement of his appeal, Cvijetinovic cannot rely on the alleged novelty of his *Blakely* claim to establish cause for his procedural default.

Nor can he rely on his claim's perceived futility.  In excusing Cvijetinovic's default, the district court placed heavy emphasis on the observation that, when he initiated his direct appeal, resort to a *Blakely*-type claim would have been "manifestly futile," as "every [federal] Circuit Court believed *Apprendi* permitted judicial fact-finding within the [G]uidelines range . . . ."  *Cvijetinovic*, 617 F. Supp. 2d at 643, 646.  But as the Supreme Court held in *Bousley v. United States*, "futility cannot constitute cause if it means simply that a claim was 'unacceptable to [a] particular court at [a] particular time.'"  523 U.S. 614, 623 (1998) (quoting *Engle*, 456 U.S. at 130 n.35); *see also Smith v. Murray*, 477 U.S. 527, 535 (1986) (noting that it is an "established rule that perceived futility alone cannot constitute cause" (citations and internal quotation marks omitted)).  As a result, the alignment of the circuits against a particular legal argument does not equate to cause for procedurally defaulting it.  *See Wheeler*, 329 F. App'x at 636 ("The fact that we were unreceptive to the *Apprendi* argument at the time cannot excuse [defendant's] failure to raise the issue." (citing *Bousley*, 523 U.S. at 623)); *see also McCoy v. United States*, 266 F.3d 1245, 1258–59 (11th Cir. 2001) ("The fact that every circuit which had addressed the issue had rejected the proposition that became the *Apprendi* rule simply demonstrates that reasonable defendants and lawyers could well have concluded it would be futile to raise the issue. . . . [But] the Supreme Court could not have been clearer that perceived futility does not constitute cause to excuse a procedural default."); *United States v. Moss*, 252 F.3d 993, 1002 (8th Cir. 2001) ("The Supreme Court has rejected the argument that default can be excused when existing lower court precedent would have rendered a claim unsuccessful.").[7]

---

[7]The thrust of the dissent is that a petitioner should not be required to raise a claim that is "actually" futile.  The problem is, a *Blakely*-type claim was not "actually" futile in this case.  While many courts had determined that *Blakely*-style arguments were unpersuasive, the issue had not been ruled upon by the Supreme Court.  What is more, certain members of the Court had openly opined that the holding in *Blakely* was an inevitable outgrowth of the decision in *Apprendi*.  *See Apprendi*, 530 U.S. at 550–51 (O'Connor, J., dissenting).  Thus, it cannot be said that a *Blakely*-type claim was actually futile.  Unless the Supreme Court has decisively foreclosed an argument, declarations of its futility are premature.

Admittedly, this rule could, under certain circumstances, lead to some potentially undesirable results.  One jurist predicted that "defense counsel will have no choice but to file one 'kitchen sink' brief after another, raising even the most fanciful defenses that could be imagined based on long-term logical implications from existing precedents." *United States v. Smith*, 250 F.3d 1073, 1077 (7th Cir. 2001) (Wood, J., dissenting from denial of rehearing en banc).  However, "[u]nless and until the Supreme Court overrules its decisions that futility cannot be cause, laments about those decisions forcing defense counsel to file 'kitchen sink' briefs in order to avoid procedural bars are beside the point." *McCoy*, 266 F.3d at 1259; *see also* Brent E. Newton, *An Argument for Reviving the Actual Futility Exception to the Supreme Court's Procedural Default Doctrine*, 4 J. App. Prac. & Process 521, 544 (2002) ("*Bousley* . . . appear[s] to have nailed the coffin shut on futility as an exception to the procedural default doctrine in the federal courts[.]").[8]  Furthermore, allowing defendants to refrain from making certain arguments on the basis of perceived futility would also have deleterious consequences: it would "invite criminal defendants to bypass the preferred procedural avenue of trial and direct appeal in favor of collateral review.  Collateral review would come in turn to serve as an all-purpos[e] receptacle for claims which in hindsight appear more promising than they did at the time of [appeal]." *United States v. Sanders*, 247 F.3d 139, 145–46 (4th Cir. 2001).

As Cvijetinovic offers no other excuse for his default, we conclude that he has not established cause, thereby freeing us of the duty to evaluate whether he has shown prejudice. *See Bonilla v. Hurley*, 370 F.3d 494. 497 (6th Cir. 2004) ("Since both cause and prejudice must be shown to excuse a procedural default, the failure to establish cause eliminates the need to consider prejudice." (citing *Murray*, 477 U.S. at 494–95)).

---

[8]Although the dissent finds a contradiction, we cite Newton accurately for his exposition of what the law *is*, not for what he thinks it *ought* to be.

IV

Because Cvijetinovic has not shown cause for procedurally defaulting his *Blakely* claim, we **REVERSE** the district court's conditional grant of a writ of habeas corpus.

---

**DISSENT**

---

KEITH, Circuit Judge, dissenting. The majority's interpretation of *Engle v. Isaac*, 456 U.S. 107 (1982), in line with Eleventh Circuit precedent, would require defense counsel to anticipate and articulate constitutional arguments that are contrary to controlling Supreme Court precedent. *See, e.g., Pitts v. Cook*, 923 F.2d 1568, 1571 (11th Cir. 1991). This reading is not only unfounded but also poses worrying policy concerns. Because counsel's failure to articulate a *Blakely* claim prior to *Blakely*, itself, constitutes sufficient cause to excuse procedural default, I respectfully dissent.

The majority cites the Eleventh Circuit for the proposition that cases involving cause for procedural default are governed by a different and more difficult standard than those challenging the adequacy of counsel's performance. *Id.* Under the latter, counsel's failure to predict changes in constitutional law is not error. *See United States v. Burgess*, 142 F. App'x 232, 241 (6th Cir. 2005) (citing *Fuller v. United States*, 398 F.3d 644, 651 n.4 (7th Cir. 2005)). Under the former, counsel must advance federal constitutional claims in state courts if fellow attorneys have done so. *Smith v. Murray*, 477 U.S. 527, 535 (1986). The majority contends that the duty holds even if no court in the nation has credited the claim.[1] However, the Supreme Court could not have intended that defense counsel be required to advance actually futile claims.

In support of its view, the majority notes that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to [*a*] particular court at [*a*] particular time.'" *Engle*, 456 U.S. at 130 n.35 (emphasis added). Yet, even two years after *Apprendi*, every federal circuit upheld judicial fact-finding as an acceptable means of enhancing a sentence within the prescribed Guidelines range. *See, e.g., United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002) (collecting cases). Such unanimity at the

---

[1]Significantly, this Circuit has never before specifically addressed whether failure to present an argument to expand *Apprendi* prior to *Blakely* precludes the defendant from establishing "cause" in the habeas context.

federal level is quite a different beast than "the futility of presenting an objection to the state courts." *Engle*, 456 U.S. at 130. Further, such unanimity was not present in *Engle*, wherein "numerous courts [had] agreed" that the defendant's lead argument, that "the Due Process Clause requires the prosecution to bear the burden of disproving certain affirmative defenses," was colorable. 456 U.S. at 133. The *Engle* Court warned the defendant who "perceives a constitutional claim and *believes it may find favor* in the federal courts" not to "bypass the state courts simply because he thinks they will be unsympathetic to the claim." 456 U.S. at 130 (emphasis added). Here, Cvijetinovic was sentenced below the statutory maximum though his sentence was increased on the basis of judicially-found facts. He simply had no claim in a pre-*Blakely* world. I would therefore "hesitate to adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the hope that some aspect might mask a latent constitutional claim." *Engle*, 456 U.S. at 131.

To that end, I believe the majority too quickly disposes of the argument that its holding will compromise judicial economy. To preserve claims on appeal, even futile ones, defense counsel must serve as both representative and prophet. Their briefs become experiments in, rather than mere exercises of, advocacy. One commentator has indicated that "encouraging prisoners to repeatedly urge state judges to rethink old precedents shows little respect for state courts and their decisions, but instead encourages defense counsel to raise issues the state courts consider settled, thereby wasting judicial time and resources and perhaps exacerbating federal-state tensions." Kit Kinports, Habeas Corpus, Qualified Immunity, and Crystal Balls: Predicting the Course of Constitutional Law, 33 Ariz. L. Rev. 115, 135 (1991). Accordingly, I agree with Judge Woods's prediction that "defense counsel will have no choice but to file one 'kitchen sink' brief after another, . . . based on long-term logical implications from existing precedents." *United States v. Smith*, 250 F.3d 1073, 1077 (7th Cir. 2001). The potential consequences of requiring "a virtually omniscient counsel in the cause sphere" are serious, because the requirement makes it more likely that procedural deficiencies will trump a prisoner's meritorious assignments of constitutional error. *See* Yale L. Rosenberg, Constricting Federal Habeas Corpus: From Great Writ to Exceptional

Remedy, 12 Hastings Const. L.Q. 597, 627 (1985). Arguing that mention of "kitchen sink briefs" is "beside the point," the majority cites Brent E. Newton, An Argument for Reviving the Actual Futility Exception to the Supreme Court's Procedural Default Doctrine, 4 J. App. Prac. & Process 521, 544 (2002) (hereinafter "Reviving"). However, that author's analysis might well compel a result other than that reached here. "Logically and equitably," Newton writes, "actual futility—as opposed to a defendant's mere perception of futility when in fact an objection would not necessarily have been futile—should excuse a procedural default." *Id.* (emphasis added). "If, however, a court before which a defendant appears has the power to grant relief on particular claim of error (*i.e.*, a superior court addressing the same issue has not already ruled that such a claim lacks merit), then the futility exception should not apply." *Id.* Cvijetinovic's second direct appeal became final on May 26, 2004, just nine days prior to the Supreme Court's decision in *Blakely*. The Ohio courts to which Cvijetinovic appealed roundly rejected *Blakely*-like arguments before *Blakely* was handed down. *See, e.g.*, *State v. Neal*, No. 2001CA00067, 2001 WL 1771034, at *3 (Ohio Ct. App. August 31, 2001); *State v. Johnson*, Nos. L-00-1327, L-00-1326, L-00-1325, 2001 WL 256181, at *2 (Ohio Ct. App. March 16, 2001). It follows that Cvijetinovic's strongest argument, that the statute under which he was sentenced was unconstitutional, was actually futile. Newton writes that "no legitimate governmental interest would be served by requiring an objection" where a "state or federal trial court would be utterly powerless to grant any relief on the objection," and indicates that "a state or federal appellate court—even a state supreme court or *en banc* United States Court of Appeals—would be without power to overrule precedent of the United States Supreme Court." Reviving, 4 J. App. Prac. & Process at 555. It follows that the majority's own authority cuts in Cvijetinovic's favor on policy grounds.

Finally, the aforementioned competing standards seem to disaggregate the counsel-client relationship. In *Burgess*, for example, we noted that "[a]s a matter of law, there simply is no basis for Burgess's assertion that his counsel's failure to predict th[e] novel line of authority [stemming from *Blakely*] 'fell below an objective standard of

reasonableness.'"**2** *Burgess*, 142 F. App'x 232, 241. Counsel's boon is his client's burden. Where, as here, counsel advances a *Blakely* claim only after *Blakely*, itself, was decided, the client pays the price of his freedom. I submit that requiring prescience in cases involving a question of cause, while excusing lack of prescience in cases involving the ineffective assistance of counsel, establishes a potentially inconsistent framework for the adjudication of habeas claims. For these reasons, I respectfully dissent.

---

**2**  *See also, e.g.*, *United States v. McDaniel*, 398 F.3d 540, 547 (6th Cir. 2005) (collecting cases in which failure to raise *Apprendi* prior to *Blakely* was not bar to defendants challenging their sentence post-*Blakely*); and *States v. Stines*, 313 F.3d 912, 917 (6th Cir. 2002) ("[i]t would have been impossible for the defendants to have intentionally relinquished or abandoned their *Apprendi* claims considering *Apprendi* was decided after they were sentenced"). And in *Foster*, the Ohio Supreme Court noted that "no one could have predicted that *Blakely* would extend the *Apprendi* doctrine to redefine 'statutory maximum.'" *Foster*, 109 Ohio St. 3d at 11. I therefore find persuasive the notion that "a claim is not reasonably available, without more, when the claim is based on the Supreme Court's intervening overruling of its own precedent." *Richardson v. McCann*, 653 F. Supp. 2d 831, 844 (N.D. Ill. 2008).