RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0307p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

TERRY CLIFTON,

      *Petitioner-Appellant,*

    *v.*

No. 13-5402

WAYNE CARPENTER, Warden,

      *Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 1:11-cv-01347—J. Daniel Breen, District Judge.

Argued: August 8, 2014

Decided and Filed: December 24, 2014

Before: ROGERS and GRIFFIN, Circuit Judges; VAN TATENHOVE, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** D. Bruce La Pierre, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, for Appellant. John H. Bledsoe, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** D. Bruce La Pierre, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, Brian C. Walsh, BRYAN CAVE LLP, St. Louis, Missouri, for Appellant. John H. Bledsoe, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

_____

**OPINION**

_____

GREGORY F. VAN TATENHOVE, District Judge.  Terry    Clifton's    habeas    corpus petition was denied because he failed to file his appeal in the Davidson County Chancery Court within the sixty-day period allowed for filing such appeals.  Clifton attempted to file during that timeframe, but the clerk returned it unfiled because of unpaid court costs from a previous matter. Tennessee Code § 41-21-812 prohibits court clerks from filing claims while inmates have court costs and fees outstanding.  Consequently, the district court dismissed Clifton's habeas corpus claim on the basis that Clifton had procedurally defaulted.

Clifton now appeals this finding, arguing that he was deprived of a state-authorized parole revocation appeal due to his indigence and inability to pay court costs.  The question before us is whether Tennessee may constitutionally require that "prior fees, taxes, costs and other expenses [be] paid in full" before permitting a prisoner to file a habeas corpus petition challenging the constitutionality of his probation revocation proceedings.  Tenn. Code Ann. § 41-21-812.  Because the answer to this question is no, the case will be REMANDED for further proceedings.

I

In 1983, Terry Clifton was convicted of grand larceny, found to be a habitual criminal, and sentenced to life in prison.  Twenty-seven years later, in March of 2010, Clifton was paroled. After Clifton had been released, Tennessee's Appellate Court Cost center sent Clifton an invoice for $124.10 in outstanding court costs.  Clifton attempted to make a payment on this debt and contacted the Center to establish a payment plan.

Clifton's parole was short-lived.  Only a few months later, on July 23, 2010, the Tennessee Board of Probation and Parole issued an arrest warrant based on allegations that Clifton had violated his conditions of parole by engaging in "intimidating and threatening behavior."  After holding a hearing, the parole board recommended that Clifton's parole be

revoked. Clifton appealed the decision to the Parole Hearings Director but his appeal was denied.

In compliance with Tennessee Code §§ 27-9-101 and 102, Clifton next filed a petition for a writ of certiorari[1] in the Davidson County Chancery Court. Although the petition was timely filed, the court clerk refused to file it because Clifton had unpaid court costs. Clifton attempted to appeal this decision to the Tennessee Court of Appeals, but his notice of appeal was also returned unfiled by the chancery court for the same reason. In a letter to Clifton, the clerk explained that the clerk could not file Clifton's petition because of outstanding and unpaid court costs totaling $1,449.15.

The clerk's decision to return Clifton's petition and notice of appeal unfiled was in compliance with a Standing Order of the chancery court, a copy of which was enclosed with the letter, that directed the clerk "not to file another claim received by this office from an inmate until prior fees, taxes, costs and other expenses assessed to the inmate are paid in full." [R.1, Chancery Court Standing Order, Page ID#49.] Included in the Standing Order was the full text of the Tennessee statute:

> (a) Except as provided by subsection (b), on notice of assessment of any fees, taxes, costs and expenses under this part, a clerk of a court may not accept for filing another claim by the same inmate until prior fees, taxes, costs and other expenses are paid in full.
>
> (b) A court may allow an inmate who has not paid any costs or expenses assessed against the inmate to file a claim for injunctive relief seeking to enjoin an act or failure to act that creates a substantial threat of irreparable injury or serious physical harm to the inmate.

Tenn. Code Ann. § 41-21-812.

On October 28, 2011, Clifton filed *pro se* a petition for a writ of habeas corpus, alleging that his constitutional rights to due process and equal protection were violated during his parole revocation proceeding.[2] Clifton also filed a motion seeking to be excused from filing his petition

---

[1]Clifton's petition was actually titled a "Motion for an Order of Waiver of Exhaustion" but it was construed as a petition for writ of certiorari.

[2]Clifton's petition was filed pursuant to 28 U.S.C. § 2241 although the district court construed it as a 28 U.S.C. § 2254 petition.

for a writ of certiorari in the chancery court. The District Court for the Western District of Tennessee acknowledged Clifton's contention that he was unfairly prevented from filing his appeal to the Davidson County Chancery Court because of his failure to pay outstanding fees, but concluded that the claims were procedurally defaulted as Clifton had failed to file his appeal in the Chancery Court within the sixty-day period for filing such appeals. The court also concluded that Clifton had not established "cause" and "prejudice" to overcome the procedural default.

II

A

"Due to longstanding policies of comity and respect between state and federal courts, a habeas petitioner must give state courts the first opportunity to consider and rule upon the federal claims the prisoner wishes to use to attack his state court conviction." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Consistent with these principles, a federal court will not consider a petition for habeas unless the petitioner has sufficiently exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A) (2012). Normally, when a petitioner fails "to fairly present federal claims to the state courts, and a state procedural rule . . . prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski*, 576 F.3d at 605 (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)).[3]

This Court undertakes a four-part inquiry to determine whether a habeas petitioner procedurally defaulted on a claim. Such default occurs when:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

---

[3]"Whether a petitioner's federal habeas claim is barred by procedural default is a question of law reviewed de novo." *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 693 (2013) (citing *Abela v. Martin*, 380 F.3d 915, 922 (6th Cir. 2004)). The district court's factual findings are reviewed under the clearly erroneous standard. *Cvijetinovic v. Eberlin*, 617 F.3d 833, 836 (6th Cir. 2010).

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (citations omitted). This case hinges on the question of whether the "state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim." *Id*. at 290.

The district court's procedural default finding rested on the fact that Clifton "did not follow the [state] court rules in filing his appeal with the Davidson County Chancery Court." [R. 38, Dismissal Order, PageID#1704.] Based on this finding, the court concluded that he had not exhausted his remedies in the Tennessee state courts. In its procedural default analysis, despite noting the applicable standard, the district court did not actually consider whether the Tennessee statute was an "independent and adequate" state ground. Rather, the district court concluded that "[w]hether the state court properly refused his appeal for nonpayment of court costs constitute[d] a state law issue" and that such "[e]rror in the application of state law is not cognizable in federal habeas proceedings." [R. 38, Dismissal Order, PageID#1705 (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).] After concluding that Clifton had procedurally defaulted his claim, the district court further found that Clifton had not shown "cause" and "actual prejudice" or "a fundamental miscarriage of justice," and thereby concluded that he could not overcome the procedural default. [R. 38, Dismissal Order, PageID#1704.]

B

First, Tennessee contends that Clifton may not challenge the constitutionality of Tennessee Code § 41-21-812 in a habeas corpus action. This misstates the inquiry. Clifton's habeas action challenges the constitutionality of the parole board's decision. The Tennessee statute is only implicated insofar as it was used to prevent him from filing his appeal which, ultimately, served as the basis for his procedural default. The question of whether Tennessee Code § 41-21-812 is adequate is a question to be answered by the federal courts. *See Cone v. Bell*, 556 U.S. 449, 465-66 (2009) (internal citations and quotation marks omitted) ("We have recognized that the adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question."); *see also Lee v. Kemna*, 534 U.S. 362, 375 (2002); *Coleman v. Thompson*, 501 U.S. 722, 736 (1991) ("[F]ederal habeas courts must ascertain for themselves if the petitioner is in

custody pursuant to a state court judgment that rests on independent and adequate state grounds."); *Douglas v. Alabama*, 380 U.S. 415, 422 (1965).

Whether a state procedural rule is "adequate and independent" generally requires "an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (citing *Henry v. Mississippi*, 379 U.S. 443, 446-48, 485 (1965)). A state law cannot, however, serve as an "adequate basis for the state court's decision . . . under the adequate and independent state ground doctrine" where that basis violates the United States Constitution. *Doan v. Brigano*, 237 F.3d 722, 727-28 (6th Cir. 2001), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2013). In *Doan*, we considered the question of whether an Ohio Rule could be an "adequate and independent" basis for a state court's procedural default finding:

> A state court's decision on a question of state law is adequate to support its judgment only if the "state law basis for the decision is sufficient by itself to support the judgment, regardless of whether the federal law issue is affirmed or reversed." Erwin Chemerinsky, Federal Jurisdiction § 10.5.2, at 619 (2d ed.1994). In this case, however, whether Ohio Evid. R. 606(B) is sufficient to support the state court of appeals's judgment clearly depends upon whether the Rule conflicts with the guarantees of the U.S. Constitution. The Supremacy Clause states that the "Constitution . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. If Ohio Evid. R. 606(B) is contrary to the U.S. Constitution, it may not serve as the basis for the state court of appeals's judgment. Thus, "[s]tate law obviously is not adequate to support the result when there is a claim that the state law itself violates the United States Constitution." Chemerinsky, *supra*, § 10.5.2, at 619.

*Doan*, 237 F.3d at 727-28. This principle was reiterated recently when we recognized that a court's review "for constitutional infirmity . . . is circumscribed by deference to 'a State's application of its own firmly established, consistently followed, *constitutionally proper procedural rules*.'" *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014) (emphasis added) (citing *Trevino v. Thaler*, 133 S. Ct. 1911, 1917 (2013)).

The Tennessee Prisoner Litigation Reform Act is codified at Tennessee Code §§ 41-21-801 through 41-21-818. This legislation, adopted in 1996 to curb frivolous prisoner litigation, imposes filing requirements and restrictions on "claim[s] brought by an inmate in general

sessions or a trial level court of record in which an affidavit of inability to pay costs is filed with the claim by the inmate." Tenn. Code Ann. § 41-21-802. A "claim" is defined as "any lawsuit or appeal filed by an inmate except a petition for post-conviction relief." *Id.* § 41-21-801(1). The statute explains that the inmate is "required to pay the full amount of the filing fee" and includes an explanation of how to devise a payment schedule. *Id.* § 41-21-807. An inmate's initial partial filing fee is twenty percent of the greater of the average monthly (1) deposits to the inmate's trust account, or (2) balance in the account for the six-month period preceding the filing. *Id.* § 41-21-807(b). Monthly payments then must be made until the filing fee is paid in full. *Id*. § 41-21-807(b)(2). At the conclusion of the litigation, any costs incurred by the inmate must also be paid using the same monthly payment technique. *Id.* § 41-21-808(a)-(b).

Most relevant to this case, if an inmate has outstanding "fees, taxes, costs and expenses" then "a clerk of a court may not accept for filing another claim by the same inmate until prior fees, taxes, costs and other expenses are paid in full," except an inmate is permitted "to file a claim for injunctive relief seeking to enjoin an act or failure to act that creates a substantial threat of irreparable injury or serious physical harm to the inmate." Tenn. Code Ann. § 41-21-812. This prohibition appears to be tempered by Tennessee Code § 41-21-807(b)(4), which provides that "[i]n no event shall an inmate be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the inmate has no assets and no means by which to pay the initial partial filing fee." *Id*. § 41-21-807(b)(4). These two provisions are incongruous. This incompatibility was recognized in *Gray v. Tennessee Department of Correction*, where the Tennessee Court of Appeals examined the two provisions and determined that the legislature intended § 41-21-812 to bar actions until the amount owed is paid. No. E2012–00425–COA–R3–CV, 2013 WL 5677004, at *4-*6 (Tenn. Ct. App. Oct. 17, 2013) (holding that if there are court costs owed from a prior matter, the language from Tenn. Code Ann. § 41-21-812 bars the action until the amount owed has been paid). This effectively nullified the waiver contained in Tennessee Code § 41-21-807(b)(4).

Tennessee is not alone in trying to reduce frivolous prisoner litigation and looks to other states for support. Both parties refer to a statute in Michigan which provides that "[a] prisoner who has failed to pay outstanding fees and costs . . . shall not commence a new civil action or

appeal until the outstanding fees and costs have been paid." Mich. Comp. Laws Ann. § 600.2963(8). Tennessee cites two Michigan cases where prisoners challenged the constitutionality of that statutory provision but were not granted relief. *See Marsh v. Booker*, No. 2:11-CV-13355, 2011 WL 3625070 (E.D. Mich. Aug. 17, 2011); *see also Ward v. Howes*, No. 4:06-CV-127, 2007 WL 172515 (W.D. Mich. Jan. 19, 2007). While it is true that the Petitioners in *Marsh* and *Ward* did not win on their arguments attacking § 600.2963(8), Tennessee's argument is flawed. In each case the courts were able to avoid the question of the constitutionality of § 600.2963(8) because the prisoner's objections, as they were raised, could not have possibly led to a change in the prisoner's confinement and, therefore, would not have been cognizable under 28 U.S.C. § 2254. *Marsh,* 2011 WL 3625070, at *4; *Ward*, 2007 WL 172515, at *1. Petitioner points out that the Supreme Court of Michigan has raised questions about the constitutionality of § 600.2963(8) as it applies to habeas proceedings. *See Guzmen v. Dep't of Corr.*, 844 N.W.2d 127 (Mich. 2014) (citing *Smith v. Bennett*, 365 U.S. 708 (1961)) (applying Mich. Comp. Laws Ann § 600.2963(8) "to bar plaintiff from initiating an application for leave to appeal from the original complaint for habeas corpus filed in the court of appeals would violate the Equal Protection Clause of the Fourteenth Amendment").

Tennessee also relies heavily on a series of Louisiana Appellate Court decisions that consider a Louisiana statute which requires cases to be held in abeyance until fees are paid and to be dismissed if held in abeyance for more than three years. *See Rhone v. Ward*, 902 So. 2d 1258 (La. Ct. App. 2005), *cert. granted*, 920 So. 2d 217 (La. 2006); *see also Rhone v. Ward*, 31 So. 3d 591 (La. Ct. App. 2006), *cert. denied*, 34 So. 3d 291 (La. 2010). These cases are distinguishable. Not only is the statutory scheme different, but the Louisiana courts' analysis concentrates primarily on whether the statutory framework is consistent with the protections guaranteed by the Louisiana Constitution, not the Federal Constitution.

There can be no doubt that reducing frivolous litigation is a legitimate state objective. Accepting, however, that the reduction of prisoner litigation is a legitimate aim does not justify all means of reducing such litigation. The means of achieving this goal must not unconstitutionally deprive an indigent defendant access to the courts. The Supreme Court has long held that procedures which limit an indigent defendant's access to the courts, where that

limitation could result in a deprivation of liberty, are constitutionally deficient. In *Griffin v. Illinois*, 351 U.S. 12 (1956), the Supreme Court held that if a state makes trial transcripts available to defendants who can afford the transcript, then the state must also provide those transcripts to defendants who cannot afford them. The Court explained that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *Id.* at 19.

A few years later in *Burns v. Ohio*, 360 U.S. 252 (1959), the Supreme Court held that a criminal defendant's access to the appellate courts could not be contingent on his ability to pay a $20.00 filing fee. In *Smith v. Bennett*, 365 U.S. 708, 709 (1961), the Supreme Court held that filing fees could not prevent indigent, convicted prisoners from filing habeas corpus petitions. Importantly, *Smith* extended indigents' protections to collateral proceedings which attack the validity of detention as opposed to simply the correctness of the conviction. *Id.* In *Lane v. Brown*, 372 U.S. 477 (1963), the Court evaluated Indiana's procedure of providing indigent prisoners in post-conviction proceedings with trial transcripts. The Supreme Court held that the Indiana law, which only allowed indigent defendants to procure transcripts for *coram nobis* hearings through the Indiana Office of the Public Defender, was unconstitutional and, in so doing, reiterated that *Griffin*'s protections apply in collateral proceedings. *Id.* at 484-85.

Access to the courts cannot be contingent on wealth. *Griffin* and its progeny clearly provide that indigent defendants, whose liberty is on the line, cannot receive less process because of their pauper status. *Smith* makes it clear that these protections even apply in collateral proceedings. Here, Clifton had a liberty interest at stake. *See Alkire v. Irving*, 330 F.3d 802, 819 (6th Cir. 2003) (recognizing an arrestee's "Fourteenth Amendment right not to lose his liberty due to indigency"). If Clifton had had sufficient funds then the Chancery Court would have filed his notices of appeal. Had Clifton won his appeal then his parole would not have been revoked.

As it was applied, Tennessee Code § 41-21-812 prevented Clifton from challenging his probation revocation and unconstitutionally blocked his access to the courts. Thus, it cannot be considered an "adequate and independent state ground for denying review of a federal constitutional claim." *Guilmette*, 624 F.3d at 290. In the words of this Court,

[t]o hold otherwise would allow a state and its courts to evade the requirements of the United States Constitution any time they chose to apply a state procedural rule, regardless of whether that state rule complied with federal constitutional guarantees. The Supremacy Clause forbids a state from using a state rule to trump the fundamental requirements of the United States Constitution. U.S. Const. art. VI, cl. 2.

*Doan*, 237 F.3d at 728. Because Tennessee Code § 41-21-812 cannot be considered an adequate and independent ground for denying review, Clifton did not procedurally default his claim.

C

Tennessee argues that the petitioner cannot establish "prejudice" to excuse his procedural default because the state court would not have disturbed the board's decision to revoke parole. It is true that "[a] federal court will review a state prisoner's procedurally defaulted federal claim if the prisoner shows 'cause' for the default and 'prejudice' from the error, or if a manifest miscarriage of justice would otherwise result." *Sutton*, 745 F.3d at 789-90 (citing *Coleman*, 501 U.S. at 749-50). If, however, Tennessee Code § 41-21-812, a state procedural rule, is found to be anything other than an "adequate and independent state ground for denying review of a federal constitutional claim," then the district court's finding of procedural default was in error and no further showing of cause or prejudice is necessary. To put it another way, a finding that the state procedural rule rests on an adequate and independent state ground is a pre-requisite to a finding of procedural default. Only after a finding of procedural default may petitioners seek to salvage their claim by proving cause and prejudice or a manifest miscarriage of justice. *See Maupin*, 785 F.2d at 138.[4]

III

As it was applied, Tennessee Code § 41-21-812 unconstitutionally blocked Clifton's access to the Court and therefore cannot be considered an "adequate and independent state

---

[4]On August 5, 2014, three days before oral arguments were scheduled in this case, counsel for Carpenter provided supplemental authority in accordance with Fed. R. App. 28(j). That letter suggests that Clifton could have petitioned to have prior costs waived in an effort to avoid the collision described herein with Tennessee Code § 41-21-812. Nowhere in these citations is it suggested, as implied in the Rule 28(j) letter, that Clifton could have had his previous costs "waived or retaxed" after the parole revocation hearing. These supplemental authorities do not change the Court's analysis or conclusion.

ground for denying review of a federal constitutional claim." *Guilmette*, 624 F.3d at 290. Because § 41-21-812 was not an adequate and independent state ground for denying review, Clifton did not procedurally default his claim. For this reason, the District Court's procedural default finding is REVERSED, the case is REMANDED and the merits of Clifton's constitutional claims should be addressed by the district court.